**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**


URBAN INTERESTS LLC,                    )
                                        )
            Plaintiff,              )
                                        )
      v.                            )
                                        )    C.A. No. 25-1165-JLH
FLUID MARKET, INC., et al.,             )
                                        )
           Defendants.             )


---

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFF URBAN
INTERESTS LLC'S MOTION TO RETRANSFER VENUE**

---

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     LEGAL STANDARD............................................................................................2

III.    ARGUMENT .........................................................................................................3

        A.      Because Defendants Intend to Bring Fluid Back into the Case, Retransfer Is
                Impermissible—a Point Plaintiff Concedes............................................5

        B.      The Balance of the §1404(a) Factors Supports Denying the Motion .....................8

IV.     CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

Cases

*Hayman Cash Register Co. v. Sarokin*,
    669 F.2d 162 (3rd Cir. 1982)..........................................................................Passim

*In re HealthTrio, Inc.*,
    653 F.3d 1154 (10th Cir. 2011) ................................................................. 3

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) ........................................................................ 3

*Skil Corp. v. Millers Falls Co.*,
    541 F.2d 554 (6th Cir.) .............................................................................. 5

*TCF Film Corporation v. Gourley*,
    240 F.2d 711 (3d Cir. 1957) ...................................................................... 5

*United States v. Wheeler*,
    256 F.2d 745 (3d Cir.) .............................................................................. 6

*Zichy v. City of Philadelphia*,
    590 F.2d 503 (3d Cir. 1979) ...................................................................... 6

Statutes

28 U.S.C. § 1404(a) .........................................................................Passim
28 U.S.C. § 1412 ...........................................................................................3, 8

Defendants James Eberhard ("Eberhard"), Jenifer Snyder ("Snyder"), HHK Vehicles, Inc. ("HHK"), Thomas Scott Avila ("Avila"), and Paladin Management Group, LLC ("Paladin") (collectively known as "Defendants"), by and through their undersigned counsel, hereby submit the following Response in Opposition to Plaintiff's Motion to Retransfer Venue (the "Motion"), and in support thereof, state as follows:

## I.    INTRODUCTION

The Motion is premised on the inaccurate notion that "the sole basis for [this case's] transfer to this District—the presence of bankrupt entities Fluid Market Inc. and Fluid Fleet Services, LLC (collectively, "Fluid") as defendants—no longer exists[ because] Plaintiff has dismissed Fluid from this lawsuit…and it follows under well-established precedent that this Court can and should retransfer the case back to the transferring court."  D.I. 129 at 1.  Had Plaintiff conferred with Defendants before filing this Motion, Defendants would have explained their plans to bring Fluid back into the case through their assertion of cross-claims (a step that was unnecessary prior to Plaintiff's unilateral dismissal of Fluid) if and when their Answers come due—depending on the Court's eventual ruling on their Motions to Dismiss—which may have avoided this Motion.

Fluid is the nexus of this case and belongs at the center of it.  This is why every iteration of Plaintiff's Class Action Complaint has centered on Fluid's actions.  The operative Complaint in this Action is Plaintiff's third bite at the apple, and it continues to focus on Fluid's conduct above all.  D.I. 76 at ¶¶16-23, 25, 42-46, 48-55, 83-85.  If Plaintiff believed Fluid was not a relevant or necessary Party, it could have dismissed Fluid from the case when Fluid filed its original Motion to Transfer this case from Colorado to Delaware a full year ago or at least before the Colorado District Court spent the time and effort to write an opinion transferring the case here.  Plaintiff

chose not to do so.

Indeed, Plaintiff's jurisdictional gambit has come to light since the case was transferred to this District. Three weeks after the Colorado District Court transferred this case, and before Defendants noticed their appearances here, Plaintiff unilaterally decided to dismiss Fluid from this case ***without prejudice***. By dismissing without prejudice, Plaintiff can simply re-raise its claims against Fluid later, after the case is re-transferred to Colorado. Moreover, Plaintiff once again chose not to inform Defendants of its plan to dismiss Fluid from the case in furtherance of its re-transfer strategy. Had Plaintiff met and conferred on these issues, Defendants could have explained to Plaintiff that they would be filing cross-claims against Fluid in the event their Motions to Dismiss are denied. Specifically, because Fluid ***is*** the true party at fault for Plaintiff's claims, Defendants—if kept in the case upon the Court's ruling on their Motions to Dismiss—will be bringing cross-claims against Fluid for indemnification and/or contribution. Indeed, Defendants have already reached out to the Trustee in Fluid's Bankruptcy Action to ask if he will stipulate to lifting the automatic stay to allow Defendants to file cross-claims to bring Fluid back into this Action, and he has suggested he would be amenable to doing so. Defendants are still in the process of negotiating such a stipulation, but even if the Trustee ultimately refuses, Defendants can and will still file an opposed motion with the bankruptcy court seeking to lift the stay. Defendants met and conferred with Plaintiff via video conference on Tuesday, November 25, 2025 to ask if, in light of Defendants' plans to bring Fluid back into the action, Plaintiff would withdraw this Motion. Plaintiff's counsel stated that he would confer with his client and get back to Defendants' counsel. He never did.

Because this case remains related to Fluid, even in view of Plaintiff's dismissal without prejudice, transfer should be denied for the same reasons the Colorado District Court transferred

the case in the first place.  Further, while the Court need not reach the *Jumara* factors, those factors also favor denying transfer.

## II.     LEGAL STANDARD

Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Similarly, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…."  Courts consider the same factors under 28 U.S.C. § 1412 to determine if transfer would serve convenience of the Parties and the interest of justice as they consider under 28 U.S.C. § 1404(a).  *See* ECF No. 112 at 3 (citing *In re HealthTrio, Inc.*, 653 F.3d 1154, 1161 n.7 (10th Cir. 2011) ("We note that the bankruptcy transfer statute, § 1412, sets forth an analogous interests-of-justice/convenience-of-the-parties standard as § 1404(a)")).  The Third Circuit set forth a twelve-factor test that considers both the private and public interests protected by the language of § 1404(a) to aid courts in determining whether transfer is appropriate.

> The private interests have included: [1] plaintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). The private interests have included: [7] the enforceability of the judgment, [8] practical considerations that could make the trial easy, expedition, or inexpensive, [9] the relative administrative difficulty in the two for a resulting from court congestion, [10] the local interest in deciding local controversies at home, [11] the public policies of the fora, and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

## III.     ARGUMENT

Because Fluid remains related to this action, and Defendants intend to file cross-claims against them, transfer should be denied.  In truth, Plaintiff should never have dismissed Fluid from

this action.  None of the facts that have emerged in discovery support the dismissal of Fluid from this action.  Plaintiff concedes in every iteration of its Complaint that the funds owed to it are in Fluid's possession—and that Fluid even admitted as much—and nothing in discovery has contradicted that point.  D.I. 1 at ¶ 33; D.I. 33 at ¶ 27; D.I. 76 at ¶ 50.  Thus, if Defendants' Motions to Dismiss are denied, and they are ordered to answer the Second Amended Class Action Complaint, they planned to include cross-claims against Fluid.  Because Fluid is in bankruptcy, there is an automatic stay against any claims brought against Fluid.  Thus, in order to include cross-claims against Fluid, Defendants will need to get an order from the bankruptcy court temporarily lifting the stay of proceedings against Fluid for the limited purpose of asserting their cross-claims against Fluid in this action.  Defendants have conferred with Fluid's bankruptcy Trustee on this issue and are in the process of negotiating a stipulation with the Trustee consenting to Defendants' request to temporarily lift the stay to allow them to assert cross-claims in this action.  However, because that discussion is ongoing, Defendants have not yet filed their motion to lift the stay with the bankruptcy court, though they intend to do so once the Trustee provides his final position.  While such an order remains within the discretion of the judge in the bankruptcy proceedings, Defendants have no reason to believe the judge would deny such a motion if the Trustee gives his agreement.

By failing to confer with Defendants on its strategic dismissal of Fluid from this case or on this Motion, Plaintiff has caused a mess that Defendants have been left to clean up.  If Defendants' Motions to Dismiss are granted, they would never have had to incur attorneys' fees to get the stay lifted, because they would be out of the case and would not need to assert cross-claims.  But Plaintiff's tactics have forced this issue to the forefront well before it needed to be addressed.[1] Moreover, if Plaintiff had conferred with Defendants before filing this Motion, Defendants could have shared with Plaintiff their plan to bring Fluid back into the case, and Plaintiff could have

---

[1] It is worth noting here that Fluid's original Motion to Transfer was filed in November of 2024.  Plaintiff, thus, had ten months to dismiss Fluid from the case before that motion was decided—and save everyone this hassle—if it was so desperate to avoid a transfer of the case, but it chose not to—confident in its position that the case would not be transferred.  Only once Plaintiff lost that motion did it consider this new tactic in an effort to defy the decision of the transferor court.

waited until Defendants received a definitive ruling from the bankruptcy court on whether or not Fluid could be brought back into the case before filing this Motion. Defendants even gave Plaintiff a chance to cure this failure to confer by conferring themselves before filing this Response, but Plaintiff failed to take a position on whether it would withdraw its motion pending a ruling from the bankruptcy court on lifting the stay—thus requiring Defendants to file this Response. Now, if that ruling is granted, Plaintiff will have wasted everyone's time and resources with this Motion. Either way, Plaintiff is asking this Court to rule with incomplete information.

### A. Because Defendants Intend to Bring Fluid Back into the Case, Retransfer Is Impermissible—a Point Plaintiff Concedes.

In the Motion, Plaintiff concedes that "[o]rdinarily, the transfer decision of a transferor court should not—and cannot—be reviewed again by the transferee court. *See Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3rd Cir. 1982)." D.I. 129 at 6. This is based on "the principles of res judicata and the law of the case." *Sarokin*, 669 F.2d at 168. Where a transferor court properly transfers a case, "the transferee-district court should accept the ruling as the law of the case for it, and there should be no further transfer **except under the most impelling and unusual circumstances**." *Id*. (emphasis added) (quoting *Skil Corp. v. Millers Falls Co.*, 541 F.2d 554 (6th Cir.), cert. denied, 429 U.S. 1029, 97 S. Ct. 653, 50 L.Ed.2d 631 (1976) (citing IV J. Moore, Federal Practice P 0.404(8) at 531-32 (2d ed. 1974) (footnotes omitted))). This is because "'judges of coordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each other.' The purpose of this rule is 'to preserve the orderly functioning of the judicial process.'" *Id*. (internal citations omitted) (quoting *TCF Film Corporation v. Gourley*, 240 F.2d 711, 713 & 714 (3d Cir. 1957)). "This 'rule of judicial comity,' should similarly apply to the propriety of transfer orders between two courts. Once the transferor court has decided the issue of whether the suit 'could have been brought' in the transferee court, this ruling becomes the law of the case." *Id*. (internal citations omitted). "If the party opposing the transfer believes the decision is erroneous, it can either seek reconsideration in the transferor court, or else petition for a writ of mandamus in the court of appeals of the circuit in which the

transferor court is located." *Id*. at 168-69. "A disappointed litigant should not be given a second opportunity to litigate a matter that has been fully considered by a court of coordinate jurisdiction, absent unusual circumstances." *Id*. at 169. "Adherence to law of the case principles is even more important in this context where the transferor judge and the transferee judge are not members of the same court." *Id*. "Here, the principles of comity among courts of the same level of the federal system provide a further reason why the transferee court should not independently re-examine an issue already decided by a court of equal authority." *Id*.

The court in *Sarokin* identifies three exceptions to the rule of judicial comity that otherwise prohibits a transferee court from overruling the decision of the transferor court to transfer a case. First, "a successor judge may entertain a timely motion to reconsider the conclusions of an unavailable predecessor, because otherwise, the right to move for reconsideration would be effectively denied." *Id*. Second, "if new evidence is available to the second judge when hearing the issue … 'the question has not really been decided earlier and is posed for the first time; the second judge ought, therefore, to be free to render a decision.'" *Id*. (citing *United States v. Wheeler*, 256 F.2d 745, 748 (3d Cir.), cert. denied, 358 U.S. 873, 79 S. Ct. 111, 3 L.Ed.2d 103 (1958)). Third, "every court 'ha[s] a duty to apply a supervening rule of law despite its prior decisions to the contrary when the new legal rule is valid and applicable to the issues of the case.'" *Id*. at 170 (quoting *Zichy v. City of Philadelphia*, 590 F.2d 503, 508 (3d Cir. 1979)).

Here, Plaintiff does not—and cannot—assert that the first or third exceptions to the rule of judicial comity apply. Rather, Plaintiff asserts only that the second exception applies—that is, that new evidence is available to this Court that was not available to or considered by the transferor court. D.I. 129 at 6-9. The "new evidence" Plaintiff relies upon is that Fluid is no longer part of the case. *Id*. at 8 ("Plaintiff has dismissed Fluid from this lawsuit, so plaintiff is not pursuing any claims or damages against Fluid. Therefore, this lawsuit will have no effect on whatever assets the Chapter 7 estate might still have."). This is the only piece of "new evidence" raised by Plaintiff in the Motion. *See generally id*. Thus, if Fluid is brought back into the case, then Plaintiff's sole piece of "new evidence" ceases to exist, as does Plaintiff's argument that the second exception to

- 6 -

the rule of judicial comity permits this Court to grant the Motion.  In fact, even if Defendants fail to bring Fluid back into the case, Plaintiff's claim that Fluid is gone for good is dubious, at best, given Plaintiff only dismissed Fluid *without prejudice*—thus preserving its ability to bring Fluid back on its own.  If none of the exceptions to the rule of judicial comity apply, even Plaintiff admits that "the transfer decision of a transferor court should not—and cannot—be reviewed again by the transferee court." *Id*. at 6 (citing *Sarokin*, 669 F.2d at 169).  In that case, Plaintiff's only recourse against the District of Colorado's transfer of this case to this Court is to "either seek reconsideration in the transferor court, or else petition for a writ of mandamus in the court of appeals of the circuit in which the transferor court is located." *Sarokin*, 669 F.2d at 168-69.  Plaintiff has done neither.

Moreover, even if Fluid is not brought back into this case based on the ruling from the bankruptcy court, re-transfer is not necessarily appropriate.  The *Sarokin* case emphasized that, once a transferor court has properly transferred a case to a transferee court, "there should be no further transfer except under the most impelling and unusual circumstances." *Id*. at 168.  There is nothing impelling or unusual about Plaintiff's strategic dismissal of Fluid—without prejudice to re-file those claims—in an effort to defy the ruling of the transferor court.  It is the exact sort of circumstance the *Sarokin* court warned of when it directed that "[a] disappointed litigant should not be given a second opportunity to litigate a matter that has been fully considered by a court of coordinate jurisdiction, absent unusual circumstances." *Id*. at 169.  Plaintiff's tactics here are not the "unusual circumstances" justifying a disregard for the foundational principle of judicial comity underlying this nation's federal court system.  If anything, Plaintiff's tactics justify denying the motion—not granting it.

Because Defendants are likely to obtain a stipulation from Fluid's bankruptcy Trustee agreeing to Defendants' planned request for relief that the bankruptcy court temporarily lift the stay of proceedings against Fluid so that Defendants can assert cross-claims against it when the time comes, Fluid's current absence from this action is unlikely to be permanent.  Once Fluid is brought back into this case, there will be no change in circumstances justifying Plaintiff's request that this Court deviate from the rule of judicial comity to reverse a transfer lawfully ordered by a

coordinate jurisdiction.  At the very least, Defendants' pledge to try to bring Fluid back into the case means that Fluid's absence from the case is anything but a settled matter.  Thus, whether there has actually been a change in circumstances sufficient to justify Plaintiff's request for relief is an unanswered question.  In that case, even Plaintiff admits the Court cannot grant the Motion.

### B.    The Balance of the §1404(a) Factors Supports Denying the Motion.

While the Court can deny Plaintiff's Motion in view of *Sarokin* alone, the *Jumara* factors further counsel in favor of denying the motion.  Plaintiff downplays that it is asking this Court to violate the rule of judicial comity by granting the Motion by arguing that it is seeking retransfer on the basis of § 1404(a), which was not actually considered by the transfer court because "[t]he Colorado district court found that transfer was proper only under 28 U.S.C. § 1412, but 'decline[d] to address Plaintiff's argument for transfer under section 28 U.S.C. § 1404(a).'  [ECF No. 112] at 6."  D.I. 129 at 5.  Although the transferor court *did* "decline[] to address Plaintiff's argument for transfer under section 28 U.S.C. § 1404(a)" having "determined that transfer is proper under 28 U.S.C. § 1412," the transferor court also acknowledged that "[c]ourts consider the same factors to determine if transfer would serve convenience of the parties and the interest of justice under § 1412 as under § 1404(a)."  D.I. 112 at 6, 3.  Thus, in analyzing Fluid's argument under § 1412, the transferor court necessarily considered various § 1404(a) factors, so it is simply not correct that "no court has weighed in on the section 1404(a) transfer factors in this case."  D.I. 129 at 9.  As discussed further in this Section, the transferor plainly considered various § 1404(a) factors, and this Court should reject Plaintiff's efforts to relitigate these factors and ignore the law of the case.

### 1.    *Jumara* Factor 1—Plaintiff's Choice of Forum—Is Neutral.

This first factor is one that the transferor court plainly considered and has already ruled on.  Specifically, the transferor court

> acknowledge[d] the consideration owed to Plaintiffs' choice of forum but [found] this factor is cancelled out by the presumption that cases should be heard in the district in which the underlying bankruptcy case is pending.  *See Shaver*[ *v. Orthodontic Centers of Colorado, Inc.*], 2007 WL 38665 at *2 [(D. Colo. 2007)] ("On the one hand, there is a presumption that the proper venue for a

> proceeding is the district in which the underlying bankruptcy case is
> pending…. On the other hand, there is also a strong presumption in
> favor of the Plaintiff's choice of forum…. The effect of applying
> both presumptions is the two presumptions effectively cancel each
> other out, and the motion will accordingly be decided on the basis
> of the remaining factors" (internal citations and quotation marks
> omitted)).

D.I. 112 at 5-6. Accordingly, it is the law of the case that the first *Jumara* factor is neutral, "and

the motion [should] be decided on the basis of the remaining factors." *Id.*

### 2. *Jumara* Factor 2—Defendants' Preference—Favors Delaware.

While even Plaintiff concedes that Defendants' preference is for the case to remain in

Delaware, Plaintiff unsurprisingly attempts to mitigate that preference by stating that the reasons

supporting Defendants' preference "are no longer present, so the non-debtor defendants'

preferences should not be afforded any significant weight." D.I. 129 at 9. First of all, Plaintiff

cannot possibly know whether Defendants have reasons to prefer Delaware that "are no longer

present," because it did not bother to confer with Defendants on this Motion prior to filing. *Id.*

Second, Plaintiff cites to no legal authority to support its assertion that Defendants' preference

should not be afforded any significant weight. Third, given Defendants' plans to bring Fluid back

into the case, Plaintiff's assertion that the reasons supporting Defendants' preference "are no

longer present" is simply incorrect. *Id.* Because Defendants prefer to keep the case in Delaware,

the second *Jumara* factor favors keeping the case in Delaware.

### 3. *Jumara* Factor 3—Where the Claims Arose—Is Neutral.

Plaintiff has not demonstrated that the claims arose in Colorado, and even its stated reasons

for asserting as much in the Motion are contradicted by the record. First, Plaintiff states that

"substantially all of the actions and omissions of the non-debtor defendants occurred [in

Colorado]." *Id.* But Plaintiff admits in the Complaint that non-debtor Defendants Paladin and

Avila are not based in Colorado. [D.I. 76 at ¶¶ 6, 9]. Paladin is a Nevada limited liability company.

*See* Decl. of William R. Thomas at ¶ 6. Moreover, Paladin's key employees who worked on Fluid

are based elsewhere, such as Nevada, Illinois, Texas, New Jersey, and Connecticut. *Id.* at ¶ 5(a)-

(e).  Thus, it is simply not correct to say that the actions and omissions of the non-debtor Defendants occurred in Colorado.

Second, the allegedly injured class members are located all over the country, so it is likewise not accurate to say the relevant injuries occurred solely in Colorado.  Although Plaintiff filed its Complaint as a "Class Action Complaint" on behalf of a large class of over 100 plaintiffs [D.I. 76 at ¶¶ 11, 96], Plaintiff has done nothing to add new members of its asserted class, certify its alleged class, or take discovery on behalf of any potential Plaintiffs other than Urban Interests, whose alleged damages comprise only about 1.62% of the total class damages asserted.  *Id*. at ¶¶ 1, 49-50, 84.  If Plaintiff postures itself as a class representative, it likewise needs to consider where its purported class members are located, but it has failed to do so in its Motion.  Indeed, despite the significant discovery already taken in this case, Plaintiff has yet to identify the locations of various members of the class with which to inform this factor.  Even the transferor court noted that Plaintiff's own Complaint concedes that the class is made up of "'numerous' nationwide class members." D.I. 112 at 6 (citing D.I. 76 at ¶¶ 93, 96).  Given the class members are "nationwide," Fluid's failure to pay monies owed to them cannot be said to be limited to Colorado.

Third, for the same reasons, many of the decommissioned vehicles giving rise to Plaintiff's claims were sold outside of Colorado.

Fourth, given Plaintiff's repeated assertion that Fluid is the party in possession of the allegedly stolen funds—which Plaintiff even alleges that Fluid admits [D.I. 76 at ¶¶ 1, 50-51]— the money subject to Plaintiff's claims is located in Delaware where Fluid is in bankruptcy proceedings.

Thus, although *some* allegedacts and omissions giving rise to Plaintiff's claims occurred in Colorado, others allegedly occurred in Nevada, Illinois, New Jersey, Texas, Connecticut, and even Delaware, among others.  Due to the admittedly nationwide nature of Plaintiff's claims, the claims cannot be said to have arisen *solely* in Colorado—nor, to be fair, *solely* in Delaware—so the third *Jumara* factor is neutral.

### 4. *Jumara* Factor 4—Convenience of the Parties—Is Neutral.

The fourth factor is one that the transferor court already considered and ruled on. Specifically, the transferor court "recognize[d] that the parties will have to travel to Delaware, but [found that] such travel should not pose a great additional burden on the parties contesting transfer. Urban Interests only has one individual member (ECF No. 76 ¶ 2), and the Court presumes that at least some of the 'numerous,' nationwide class members would have had to travel to Colorado from out of state if proceedings remained here anyway." D.I. 112 at 6. Thus, the transferor court has already held that this factor does not weigh in favor of moving the case back to Colorado. Moreover, Plaintiff's attempt to characterize Colorado as being more convenient to Defendants is improper both because, as the transferor court noted, they are not "parties contesting transfer" and because Plaintiff cannot speak for Defendants' convenience, having failed to confer with Defendants before filing this Motion and ask. Indeed, because Fluid is in Delaware bankruptcy court, Plaintiff is mistaken that Colorado would be the most convenient forum for Defendants. Arguably, given the transferor court's ruling on this factor finding that the inconvenience to Plaintiff of staying in Delaware is insignificant, especially given the nationwide nature of the class, coupled with Defendants' proclamation that staying in Delaware would be most convenient for them, the fourth *Jumara* factor could be said to weigh in favor of keeping the case in Delaware. Nevertheless, in fairness to Plaintiff's continued assertion that staying in Delaware would be inconvenient to it—despite apparently not having considered the needs and preferences of other putative class members in its analysis, nor the fact that Plaintiff has already secured local counsel— Defendants have classified this factor as a neutral.

### 5. *Jumara* Factor 5—Convenience of the Witnesses—Is Neutral.

Plaintiff has not demonstrated that "no witnesses reside in Delaware or could be made to appear for trial in this district." D.I. 129 at 10. Plaintiff has offered no declarations or evidence supporting where witnesses reside. As repeatedly noted herein, Plaintiff has made no effort to flesh out the class of FVIPs it supposedly represents, so it is unknown to what extent certain members of the class are located within 100 miles of this district or to what extent their vehicles

were bought or sold within this district, such that individuals involved in that sales process might be located within this district and might be called on to testify. In short, the full list of witnesses in this case is still evolving. Moreover, there are already certain witnesses of whom the Parties are aware who will certainly be called on and who are likewise not subject to the District of Colorado's subpoena power, such as, for example, Paladin employees who are not parties to this case. *See* Decl. of William R. Thomas at ¶ 5(a)-(e). Thus, at best, the fifth *Jumara* factor is neutral.

### 6. *Jumara* Factor 6—Location of Books and Records—Is Neutral.

Given that no books and records are located in either forum, Plaintiff concedes—and Defendants agree—that the sixth *Jumara* factor is neutral. D.I. 129 at 10.

### 7. *Jumara* Factor 7—Enforceability of a Judgment—Is Neutral.

Plaintiff's sole argument for why it claims this factor weighs in favor of transferring the case back to Colorado is that this Court does not have personal jurisdiction over Defendants. D.I. 129 at 10-11. Once again, Plaintiff speaks out of turn without having conferred with Defendants on this Motion. Given Defendants' stated preference for this case to remain in Delaware, it certainly would be inconsistent for Defendants to turn around and assert that this Court does not have personal jurisdiction. On the contrary, Defendants concede here that they consent to this Court's personal jurisdiction over them. Given this consent, Plaintiff's argument falls apart, and Plaintiff has asserted no other argument. However, Defendants likewise concede that the District of Colorado's judgments would be equally enforceable against them, so the seventh *Jumara* factor is ultimately neutral.

### 8. *Jumara* Factor 8—Practical Considerations—Favors Delaware.

The eighth *Jumara* factor is another one that the transferor court already considered and ruled on. Specifically, the transferor court found that "[t]ransferring the entire action to the District of Delaware would serve the interest of judicial economy by preventing this Court from making duplicative and/or potentially inconsistent findings, and, after handling the bankruptcy proceedings, the District of Delaware will be better situated to administer Fluid Truck's Estate." D.I. 112 at 6. Thus, the transferor court already found that this factor favors keeping the case in

Delaware. Moreover, Plaintiff's argument that the travel required by the Parties and witnesses for a trial in Delaware weighs against keeping the case in Delaware is ineffectual for the reasons already stated herein—i.e., the posturing of this case as a nationwide class action means that witnesses and Parties will be required to travel regardless of which state administers a trial.

### 9. *Jumara* Factor 9—Relative Administrative Difficulties—Is Neutral.

As Plaintiff concedes in the Motion, both districts are relatively congested. D.I. 129 at 11. However, Plaintiff's next argument, that there is some institutional knowledge of this case living with the District of Colorado that the District of Delaware would need to get "up to speed" on, is pure fiction. *Id*. The Parties have been before the Court on hearing in the District of Colorado precisely three times: once for the scheduling conference—a standard, procedural step largely divorced from the facts of a case—once for a hearing on a motion to stay the case pending the conclusion of Fluid's bankruptcy proceedings—a fact with which this Court is already painfully aware—which motion has already been ruled on, and once for a short, simple hearing on a scheduling issue related to the deposition of a non-party that has already been conducted, which was decided based on the relative schedules of the attorneys of record and not on the facts of the case. Thus, none of these hearings afforded the District of Colorado any advantage on its knowledge of the facts over this Court. Moreover, all three of these hearings were presided over by the Magistrate Judge for the District of Colorado. The Parties have ***never*** appeared before the District Court Judge in Colorado, and the only substantive order the District Court Judge has issued in this case is the one transferring the case to the District of Delaware—the facts surrounding which this Court will likewise be fully briefed on by virtue of ruling on this Motion. Additionally, the Parties have never filed any motions on discovery issues or any other issues except for the ones mentioned herein and the Motions to Dismiss, which have yet to be ruled on. Thus, in short, the progress that has been made in this case to date has been done almost entirely without the Court's involvement, so there is nothing for this Court to get "up to speed" on. This factor is, thus, neutral.

- 13 -

**10. *Jumara* Factors 10 & 12—Local Interest in Deciding Local Controversies and Familiarity of the Trial Judge With Applicable Law—Favors Delaware.**

The tenth and twelfth *Jumara* factors are both factors the transferor court has already considered and ruled weigh in favor of keeping the case in Delaware. Specifically, the transferor court found that these factors weighed in favor of transferring the case to Delaware, because the District of Delaware "has exclusive jurisdiction over Fluid Truck's property, including assets, and is thus responsible for determining whether Plaintiffs have a property interest in Fluid Truck's assets… [and] 'that bankruptcy court determination will effectively decide Plaintiff's claims against the individual defendants, because if there was *not* such a property interest, Plaintiff's claims for 'civil theft' and conversion and injunctive relief would fall by the wayside.'" D.I. 112 at 5. Because the transferor court has held that the District of Delaware "has exclusive jurisdiction over Fluid Truck's property, including assets," Delaware clearly has an interest in deciding this controversy, and the tenth *Jumara* factor weighs in favor of keeping the case in Delaware. *Id*. Moreover, because the transferor court has held that "Plaintiff's claims for fraud, civil theft, conversion, and money had and received are undoubtedly closely related to Fluid Truck's bankruptcy proceedings, and in some ways depend on the outcome of those proceedings," it cannot be questioned that the District of Delaware has more familiarity than the District of Colorado with applicable laws, as this point was even conceded by the District of Colorado itself. *Id*. Thus, the twelfth *Jumara* factor likewise weighs in favor of keeping the case in Delaware. Plaintiff points to its Colorado common law and state law claims regarding conversion, fraud, civil theft, and money had and received to argue that the District of Colorado would be better able to resolve those claims than this District, but this argument fails for multiple reasons. First, Plaintiff does not demonstrate that the standard for fraud or conversion differ substantially between Colorado and Delaware. Second, the District of Colorado—as with the District of Delaware—is a *federal* court—not a state court—so it typically deals with federal claims, and Plaintiff has not demonstrated that it has any more familiarity with these types of state law claims than the District of Delaware has. Finally, Plaintiff has not demonstrated that there is anything unique and complex

about the claims it has brought that the District of Delaware would struggle to grasp. In fact, Plaintiff's claims are garden variety and of the type any judge in this country could easily handle.

**11. *Jumara* Factor 11—Public Policies of the For a—is Neutral.**

Finally, Plaintiff concedes in the Motion that "[t]his final factor is neutral" as the "claims do not seem to implicate directly a unique public policy of either state." D.I. 129 at 12.

In sum, the first, third, fourth, fifth, sixth, seventh, ninth, and eleventh *Jumara* factors are neutral, while the second, eighth, tenth, and twelfth *Jumara* factors weigh in favor of keeping the case in Delaware. Thus, on balance, the *Jumara* factors favor keeping the case in Delaware.

## IV.    CONCLUSION

Because the principles of res judicata, the law of the case, and judicial comity all prohibit "judges of coordinate jurisdiction sitting in the same court and in the same case [from] overrul[ing] the decisions of each other," this Court cannot overrule the District of Colorado's Order transferring this case to Delaware by granting Plaintiff's Motion seeking to retransfer the case back to Colorado. *Sarokin*, 669 F.2d at 168. Such an outcome would only be permissible if one of the three exceptions to the rule of judicial comity applied. Here, Plaintiff only asserts one of those three exceptions—the introduction of new evidence not considered by the prior judge. However, Plaintiff's "new evidence"—its strategic dismissal of Fluid without prejudice for purposes of re-transfer—is undermined by Defendants' plans to bring Fluid back into the case through their assertion of cross-claims in the event they lose their Motions to Dismiss and are ordered to Answer Plaintiff's Second Amended Class Action Complaint. In fact, Defendants are already in the process of obtaining a stipulation from Fluid's bankruptcy Trustee agreeing to temporarily lift the stay of proceedings against Fluid in order to allow Defendants to assert these cross-claims when the time comes. Thus, there is no "new evidence" justifying Plaintiff's request that the Court disregard the rule of judicial comity in order to grant the Motion, and the Court must, thus, deny the Motion. Moreover, for the reasons identified herein, the balance of the *Jumara* factors promulgated to help courts decide motions to transfer brought pursuant to 28 U.S.C. § 1404(a) weigh in favor of keeping the case in Delaware. Accordingly, Defendants respectfully request that

the Court deny the Motion.

ASHBY & GEDDES                              O'HAGAN MEYER, PLLC

*/s/ Brian A. Biggs*                        */s/ Alan D. Albert*
_____            _____
Brian A. Biggs (#5591)                      Alan D. Albert (#6258)
500 Delaware Avenue, 8th Floor              800 North King Street, Plaza Suite 1
PO Box 1150                                 Wilmington, DE 19801
Wilmington, DE 19899                        (302) 492-2151
(302) 654-1888                              aalbert@ohaganmeyer.com
bbiggs@ashbygeddes.com

*Attorney for Defendants James Eberhard,*   *Counsel to Defendants Paladin Management*
*Jenifer Snyder and HHK Vehicles, Inc.*     *Company, LLC, and Thomas Scott Avila*


*Of Counsel:*                                *Of Counsel:*

Chad T. Nitta                               Wil Thomas
Shelby L. Morbach                           O'HAGAN MEYER
KUTAK ROCK                                  1331 17th Street, Suite 350
2001 16th Street, Suite 1800                Denver, CO  80202
Denver, CO 80202                            (303) 652-5860
(303) 297-2400                              wthomas@ohaganmeyer.com
chad.nitta@kutakrock.com
shelby.morbach@kutakrock.com

Dated: November 26, 2025