## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| URBAN INTERESTS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 25-1165-JLH |
| | : | |
| FLUID MARKET, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

### MEMORANDUM

## I.    INTRODUCTION

This action was transferred by the United States District Court for the District of Colorado ("Colorado District Court") pursuant to an order dated September 17, 2025 (D.I. 112) (the "Transfer Order"), on the basis of 28 U.S.C. § 1412, which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Plaintiff Urban Interests filed the action against various defendants, including Fluid Market, Inc. and Fluid Fleet Services, LLC (together, "Fluid Truck" or the "Debtors"), which entered into chapter 11 days later, as well as against certain former officers/founders (the "Individual Defendants"). The Debtors moved to transfer the action to this Court for referral to the Delaware Bankruptcy Court where their chapter 11 cases were then pending. The Colorado District Court ultimately determined that the case was "sufficiently related to a case or proceeding under title 11 to warrant transfer," and that "such transfer would be in the interest of justice." (Transfer Order at 4.) As the Colorado District Court explained:

> Plaintiff's claims for fraud, civil theft, conversion, and money had and received are undoubtedly closely related to Fluid Truck's bankruptcy proceedings, and in some ways depend on the outcome of those proceedings. Under 28 U.S.C. § 1334(e), the District of Delaware Bankruptcy Court has exclusive jurisdiction over Fluid Truck's property, including assets, and is thus responsible for determining whether Plaintiffs have a property interest in Fluid Truck's assets. *See*

1

>*In re Motiva Performance Eng'g, LLC,* No. 19-12539, 2024 WL
>243622, at *8 (B.A.P. 10th Cir. Jan. 23, 2024), *aff'd,* No. 24-2028,
>2024 WL 4965893 (10th Cir. Dec. 4, 2024) ("Determining whether
>property is estate property is a core proceeding and bankruptcy courts
>have jurisdiction over core proceedings.")*.* As Fluid Truck notes,
>"that bankruptcy court determination will effectively decide
>Plaintiff's claims against the individual defendants, because if there
>was *not* such a property interest, Plaintiff's claims for 'civil theft' and
>conversion and injunctive relief would fall by the wayside."
>
>Additionally, transfer would not pose a great inconvenience and
>would be in the interest of justice. The Court acknowledges the
>consideration owed to Plaintiffs' choice of forum but finds this factor
>is cancelled out by the presumption that cases should be heard in the
>district in which the underlying bankruptcy case is pending.

(Transfer Order at 5 (citations omitted).)

Thereafter, however, the funds at issue were disbursed by order of the Bankruptcy Court, the Debtors' assets (including books and records) were sold under § 363, and the bankruptcy cases were converted to chapter 7 liquidation. Additionally, Plaintiff voluntarily dismissed the Debtors from the action. Plaintiff has now filed a motion to retransfer venue (D.I. 129) ("Motion to Retransfer") of the matter back to the Colorado District Court, based on the change of circumstances underlying the Transfer Order. Defendants oppose the Motion to Retransfer on the basis that, should their pending motions to dismiss the action be denied, they have possible cross-claims against the Debtors.

For the reasons below, I agree that the original purpose of the well-reasoned Transfer Order has been frustrated by intervening events in the bankruptcy proceeding and by Fluid's dismissal from the case, and that, based on this change of circumstances, granting the Motion to Retransfer is appropriate.

## II.    BACKGROUND

The operative Second Amended Complaint (D.I. 76) ("Complaint") alleges that Fluid Market, Inc. and Fluid Fleet Services LLC (collectively, "Fluid") operated an on-demand vehicle

rental platform that offered the public access to rent cargo vans, box trucks, and pickup trucks via a mobile app and website.  (*Id.* ¶ 16.)   Fluid also offered a Fluid Vehicle Investor Platform ("FVIP") that enabled individuals and small business owners to purchase fleets of vehicles, and then rent them out via Fluid's platform.  (*Id.* ¶ 17.) Plaintiff Urban Interests became an FVIP owner in 2020, and over time bought 47 vehicles and placed them into the Fluid fleet.  (*Id.* ¶¶ 19-20.)  When FVIP owners like Urban Interests were ready to "decommission" their vehicles—remove them from the Fluid fleet—Fluid solicited those FVIP owners to allow Fluid to "sell [the] vehicle on [the owners'] behalf" through a third-party auction service.  (*Id.* ¶¶ 1, 22-23.)  From the sale proceeds and any receipts from insurance claims, Fluid would deduct a decommissioning fee, the cost of any necessary repairs, and other applicable fees, and turn the proceeds over to the vehicle owner within 30 days of the sale.  (*Id.* ¶¶ 23-24.)

On October 10, 2024, Plaintiff Urban Interests, a Colorado limited liability company, filed the original class action complaint against Fluid and individual defendants, Eberhard, Snyder, and Avila in the Colorado District Court.  (*See generally* D.I. 1.)  On behalf of itself and the putative class of FVIPs, the complaint asserted claims under Colorado statutory and common law for fraud, civil theft, conversion, money had and received, and injunctive and declaratory relief.  In broadest terms, the Complaint alleges that Fluid's founders, Eberhard and Snyder, and certain co-defendants, diverted sales and insurance proceeds from decommissioning through their own side company, Defendant HHK Vehicles, Inc ("HHK"), withheld payments owed to FVIPs, and transferred FVIP funds to pay themselves and fund Fluid's other operations.  The Complaint further alleges that after the termination of Eberhard and Snyder, Defendants Scott Avila and his company, Paladin Management Group LLC ("Paladin"), took control of Fluid and used funds set aside as belonging to Plaintiff and other FVIP class members, including insurance claim checks belonging to FVIPs to pay Fluid's operating expenses and Paladin's invoices.

3

Six days later, Fluid filed chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware.  On November 14, 2024, Fluid filed a Motion to Transfer to the District of Delaware pursuant to 28 U.S.C. § 1412 and 28 U.S.C. § 1404(a) (D.I. 13).  In the Motion to Transfer, Fluid argued that the claims against Fluid had to be resolved in the bankruptcy proceeding.  (*See id*. at 8-9 ("To resolve the claims against the Debtors, the Delaware Bankruptcy Court will be required to determine whether Plaintiff and the proposed class members have or had a property interest in cash held by the Debtors, or whether their rights are on a par with other general unsecured creditors of the Debtors.").  The Motion to Transfer was fully briefed by December 23, 2024 (D.I. 26).

The chapter 11 cases proceeded quickly with a Section 363 sale of most of Fluid's assets approved in December 2024.  (*See* Bankr. D.I. 259).[1]  In June 2025, the Bankruptcy Court approved the distribution of a limited portion of sales proceeds and insurance claim proceeds that had been received and segregated by Fluid during Paladin's management.  (Bankr. D.I. 458.)  On September 8, 2025, the Bankruptcy Court ordered the conversion of the chapter 11 cases to cases under chapter 7, effective September 23, 2025.  (Bankr. D.I. 568.)

Meanwhile, on September 17, 2025, the Colorado District Court granted the Motion to Transfer pursuant to 28 U.S.C. § 1412 as "a case 'related to' a proceeding under title 11," and based on the Debtors' prior representation that, to adjudicate this action, the Delaware Bankruptcy Court will be required to determine whether Plaintiff and the proposed class members have or had a property interest in cash held by the Debtors.  (*See* Transfer Order at 4-5.)  Finding that transfer was proper under 28 U.S.C. § 1412, the Colorado District Court "decline[d] to address Plaintiffs' argument for transfer under section 28 U.S.C. § 1404(a)."  (*Id*. at 6.)

---

[1] The docket of the bankruptcy cases, captioned *In re Fluid Market Inc.*, Case No. 24-12363 (CTG) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

On October 10, 2025, Plaintiff dismissed Fluid under Federal Rule of Civil Procedure 41(a)(1)(A)(i) without prejudice.  (D.I. 119.)  On November 4, 2025, Plaintiff filed the Motion to Retransfer, which is now fully briefed.  (D.I. 129, 133, 134, 135, 136, 137, 138.)

## III.    APPLICABLE STANDARDS

Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.  Similarly, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." Courts consider the same factors under 28 U.S.C. § 1412 and § 1404(a) to determine whether transfer would serve convenience of the Parties and the interest of justice.

Ordinarily, the transfer decision of a transferor court should not—and cannot—be reviewed again by the transferee court.  *See Hayman Cash Reg. Co v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) ("[T]raditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court, including its transfer order.").  Yet courts in this circuit and elsewhere recognize exceptions based on new evidence or where, as here, there has been a change in circumstances.  One such changed circumstance is "where the original purposes of the transfer have been frustrated by an unforeseen later event." *In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir. 1983) (citing 15 Wright, Miller & Cooper, FED. PRAC. & PROC. § 3846 (3d ed.) ("A motion to retransfer is perfectly appropriate, however, on a showing of changed circumstances, particularly when such developments would frustrate the purpose of the change of venue.")); *see also HAB Carriers, Inc. v. Arrow Truck Sales, Inc.*, 2009 WL 2589108, at *2 (D.N.J. Aug. 19, 2009) (for retransfer to be appropriate, "there must be an actual event occurring after the initial transfer that

undermines the specific purpose of the transfer"). When a transferee court considers retransfer based on changed circumstances, "reconsideration of the transfer order does not place the transferee court in the position of reviewing the transferor court's decision." *School-Link Techs., Inc. v. Applied Res., Inc.*, 2006 WL 1064111, at *4 (D. Kan. Apr. 20, 2006) (citing *In re Cragar*, 706 F.2d at 505). "Instead, it simply represents 'a decision that the case *then* is better tried in the original forum for reasons which became known after the original transfer order.'" *Id.* (quoting *In re Cragar*, 706 F.2d at 505 (emphasis in original)).

## IV.    ANALYSIS

Plaintiff argues that this case should be retransferred to the District of Colorado because changed circumstances have frustrated the purpose of the transfer.[2] The premise of the Colorado District Court's Transfer Order—the pendency of a "related to" proceeding under title 11—no longer exists. (D.I. 129 at 7.) "Plaintiff has dismissed Fluid from this lawsuit, so plaintiff is not pursuing any claims or damages against Fluid. Therefore, this lawsuit will have no effect on whatever assets the Chapter 7 estate might still have." (*Id*. at 8.) "Although in November 2024

---

[2] Plaintiff further asserts that, although the Court can order retransfer in the first place because of changed circumstances, as an independent basis, it may also order transfer under 28 U.S.C. § 1404. As a threshold matter, this action could have been brought in the Colorado District Court, and was in fact brought in that district, because it had subject matter jurisdiction over the claims, personal jurisdiction over the parties, and venue was proper in that district. (Complaint ¶¶ 11-15.)Plaintiff also argues that many factors considered in the § 1404(a) analysis support retransfer, including that: Plaintiff originally filed this action in the District of Colorado and such preference is usually given paramount consideration; the claims arose in Colorado, where Fluid was headquartered, substantially all of the actions and omissions of the non-debtor defendants occurred there, and no relevant actions occurred in Delaware; (3) most of the parties are located in Colorado; most witnesses reside in Colorado; the sheer distance from most of the witnesses and counsel will make trial in Delaware significantly more expensive than Colorado; and Colorado law controls Plaintiff's state-law claims, implicating legal issues unique to Colorado—particularly Colorado's uncommon civil theft statute, and Colorado courts' application of its economic loss rule to statutory civil theft claims. (*See* D.I. 129 at 9-12; *see also* D.I. 136, 137). Because this Court finds re-transfer is appropriate based on changed circumstances, however, it need not rule on Plaintiff's persuasive arguments in support of transfer under 28 U.S.C. § 1404.

there existed some questions about Fluid's assets and the fate of certain sales proceeds and insurance claim proceeds received and segregated by Fluid,"[3] Plaintiff argues, "in the intervening 11 months the bankruptcy court has resolved those questions." (*Id.*) "The bankruptcy court has ordered the distribution of those segregated funds," thus "Fluid's estate no longer possesses the very limited funds belonging to any FVIPs." (*Id*. (citing Bankr. D.I. 458).)

Defendants do not dispute these assertions but argue that (1) Plaintiff's dismissal of Fluid was without prejudice, and thus claims against Fluid may be reasserted by Plaintiffs later (*see* D.I. 133 at 2); and (2) Defendants may eventually bring cross-claims against Fluid, should Defendants not prevail on their motions to dismiss the action (D.I. 113 at 5-8), and that they have obtained relief from the stay to do so if necessary (D.I. 138; Bankr. D.I. 627.)

The Court finds Defendants' arguments unpersuasive. As to the first argument, "Plaintiff commits to dismissing Fluid with prejudice" following retransfer. (D.I. 135 at 4 n.2.)As to the second argument, Defendants' opposition brief only vaguely defines those claims as "indemnification and/or contribution" (D.I. 133 at 2), without any plausible suggestion that they have indemnification/contribution rights. Nor did Defendants provide evidence of any actual indemnity agreement. Although difficult to tell from such labels, it appears that Defendants might assert state-law tort or contract claims seeking to recover against the Debtors' remaining assets. Unlike Plaintiff's dismissed claims against Fluid, these claims would not assert any priority right to funds held in trust by Fluid. The nature of Plaintiff's claims and recovery against Fluid was an essential rationale for transfer. Plaintiff's hypothetical future claims against Fluid—on a completely

---

[3] On May 29, 2025, Fluid reported to the bankruptcy court that it was holding about $1.2 million in segregated vehicle sales proceeds, and about $2.7 million in segregated insurance claim proceeds. Bankr. D.I. 418 at 6-7.

different basis and seeking different funds—would still leave the original purpose of the Transfer Order frustrated and undermined.

## V.      CONCLUSION

For the reasons above, the Motion to Retransfer will be granted.  The Court will issue a separate Order consistent with this Memorandum Opinion.

Dated: February 24, 2026

_____
Jennifer L. Hall
United States District Judge